# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CATHERINE S. CADLE,**

        **Plaintiff,**

**v.**                                            **Case No:   6:13-cv-1591-Orl-31GJK**

**GEICO GENERAL INSURANCE COMPANY,**

        **Defendant.**

_____

## ORDER

    This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 68), Defendant's Response (Doc. 77), and Plaintiff's Reply (Doc. 85).[1]

### I.    Background

    This is a first-party bad faith action brought by Catherine S. Cadle ("Cadle") against GEICO General Insurance Company ("GEICO"), seeking to recover the damages awarded to her by a state court jury in the underlying underinsured motorist ("UM") claim against GEICO.[2]   GEICO denies that it acted in bad faith while adjusting Plaintiff's UM claim.

### II.    The Facts

    On July 27, 2007, Cadle was involved in an automobile accident with Derek S. Friend who rear-ended her.[3]   Immediately following the accident, she was transported to the hospital with

---

[1] Defendant has also filed a Motion for Partial Summary Judgment regarding damages (Doc. 70) which will be dealt with in a separate order.

[2] *Cadle v. GEIGO*, Circuit Court, Brevard County No. 05-2009-CA-013025.

[3] Friend was insured by Allstate with a liability coverage limit of $25,000.00.   Allstate

complaints of neck and back pain.   Thereafter, over the next twenty-eight months, Cadle was treated by various physicians and was subject to several medical procedures including surgery in December 2009.

GEICO was notified of the accident the same day and opened a claim file.   On June 2, 2008, GEICO's unit manager, Kathy Watkins, issued authority to settle Cadle's claim for $19,575.26.[4] The next day, GEICO offered to settle her claim for $500.00.[5]   On June 11, 2008, Cadle sent a formal demand letter to GEICO, requesting payment of the full $75,000.00 of UM benefits.   Cadle claims that at this time, GEICO had been given all of her medical records and was aware that Cadle was considering surgical intervention.

One month later, GEICO increased its offer to $1,000.00.   Unable to obtain the UM benefits to which she claimed entitlement, Cadle filed a civil remedy notice on September 17, 2008.   That notice advised GEICO that her medical bills exceeded $50,000.00 and were continuing.[6]   With no response from GEICO, Cadle filed suit on March 19, 2009.   On February 2, 2010, after learning of Cadle's surgery, GEICO authorized payment of the full $75,000.00 UM policy limit to settle Cadle's claim.   Cadle rejected that offer and proceeded to trial.

On March 8, 2013, the Brevard County jury rendered a verdict for Cadle and against GEICO in the amount of $900,000.00.   Thereafter, judgment was entered in the amount of $75,000.00,

---

tendered its $25,000.00 limit to Cadle on May 6, 2008. (*See* Doc. 77-10).

[4] This authorization was dependent upon Plaintiff having no other available insurance. (Doc. 68-2 at 28).

[5] GEICO based this offer on an evaluation of Cadle's medical bills at that time of $34,575.00, less the $25,000.00 payment from Allstate and PIP benefits of $10,000.00.   GEICO claims that it was not aware that Cadle suffered any permanent injury.

[6] Cadle filed a revised civil remedy notice on April 2, 2009, correcting the name of defendant. (*See* Doc. 77-18).

representing the UM policy limit.  The present suit was filed on October 15, 2013, seeking to recover the $900,000.00 verdict (less set-offs) rendered in the underlying case.

### III.    Summary Judgment Standard

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56. Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

### IV.    Analysis

#### A.  Bad Faith

Bad faith in the insurance context arose in third-party situations where the insurance company breached its contractual duty of good faith by exposing its insured (the tortfeasor) to an excess judgment. *See Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980)

(discussing the duty of good faith in a third-party action). The evolution of the case law in this area suggests that this contractual duty is by nature a fiduciary duty. *See State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 59 (Fla. 1995) (discussing distinction between first-party and third-party bad faith suits and noting that fiduciary duty is absent in first-party context).

A first-party bad faith claim is different. In a first-party context there is simply a disagreement between the insured and her insurer over the value of the insured's claim. From a contractual standpoint, the insured's claim is limited to the policy limit, prejudgment-interest, costs, and perhaps attorney's fees, because that is the entirety of the bargained-for benefit. By statute, however, Florida has created a remedy for first-party bad faith, which includes recovery of damages in excess of the policy limit. In essence, a statutory first party claim can trump the contract and provide a windfall to a plaintiff who proves that the insurer adjusted her claim in bad-faith.

Florida Statutes § 624.155(1)(b)(1) requires an insurer to act in good faith in its handling of first-party claims by acting fairly and honestly and with due regard for its insured's interests in attempting to settle such claims when it could and should do so. Courts must evaluate the totality of the circumstances to determine if a carrier had acted in good faith. *See Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004) (discussing use of totality of the circumstances standard in first-party context). While similar to the third-party standard, it is different because in the first-party context the insurer is not exposing its insured to excess liability as a tortfeasor.

Further, bad faith is more than mere negligence. *See Bell v. Geico Gen. Ins. Co.*, 489 F. App'x 428, 431 (11th Cir. 2012) ("[S]imple negligence does not amount to bad faith."). "Critical to the elements of a bad faith cause of action are knowledge and/or delay on the insurance company's part. At the point in time when liability has become reasonably clear, failure to pay may subject the insurance company to a judgment in excess of the policy limits." *316, Inc. v. Maryland Cas. Co.*,

625 F. Supp. 2d 1187, 1192 (N.D. Fla. 2008) (emphasis added). Neither disagreement as to the dollar amount of damages nor utilization of the judicial process or a contractual procedure to resolve the dispute necessarily entails bad faith. *See id.* at 1192-93 ("The fact that the appraisers found that [defendant] owed more money to [plaintiff] does not, in and of itself, indicate bad faith on the part of [defendant].").

### B.  Cadle's Claim for Bad Faith

Plaintiff claims that GEICO failed to settle her claim for the $75,000.00 policy limit when it could and should have done so.   However, the totality of the circumstances is a fact-driven inquiry and resolution thereof is rarely possible as a matter of law. *See Vest v. Travelers Ins. Co.*, 753 So.2d 1270, 1275 (Fla. 2000) ("Good-faith or bad-faith decisions depend upon various attendant circumstances and usually are issues of fact to be determined by a fact-finder.").   Rather, the question of an insurer's bad faith is generally a question for the jury, and that is the case here.

Although Plaintiff underwent a series of medical treatments, including surgery, GEICO had reason to believe that Cadle had not suffered a permanent injury.   Absent permanent injury, Cadle's claim against the tortfeasor, and thus her UM benefit, would be limited to medical specials, which, prior to the surgery, GEICO calculated at approximately $34,000.00. (*See* Doc. 77-13 at 43:25- 44:19 (stating Plaintiff's bills amounted to $54,730.15, but actual expense was estimated to be $34,575.26 based on expected reasonable and customary costs)).   Since Plaintiff had received $35,000.00 in insurance payments from Allstate and GEICO, GEICO's offer of $500.00 on June 3, 2008 and $1,000.00 in July are not patently unreasonable.

The evidence viewed in a light favorable to the Defendant supports a conclusion that, based on the totality of the circumstances at that time, GEICO acted reasonably and in good faith towards

its insured when adjusting this first-party claim. Plaintiff's Motion for Summary Judgment will therefore be denied.

It is therefore,

**ORDERED**, the Plaintiff's Motion for Summary Judgment (Doc. 68) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 6, 2014.

_____
**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party